# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GBOLAHAN R. EYIOWUAWI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-6492 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| COUNTY OF COOK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gbolahan R. A. Eyiowuawi brings suit against his former employer, Defendant Cook County, for allegedly discriminating against him on the basis of his sex and national origin and retaliating against him for filing discrimination complaints and an earlier lawsuit, in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e. Currently before the Court is Defendant's renewed motion for summary judgment [83]. For the following reasons, the Court grants Defendant's renewed motion for summary judgment [83]. As a housekeeping matter, Plaintiff's motion for leave to file a supplemental memorandum in response to Defendant's motion for summary judgment and Plaintiff's request to continue as *pro se* [86] is stricken as moot, as it is duplicative of Plaintiff's motion [89], which the Court granted in part and denied in part [91].[1] The Court will issue final judgment and close the case.

## I.    Background

The following facts are drawn primarily from the parties' Local Rule 56.1 statements of facts [57], [61], and [65].

---

[1] The Court gave Plaintiff until May 31, 2017 to file a supplemental brief, [see 91], but Plaintiff failed to do so.

**A.        Plaintiff Applies for the Position of Home Transportation Supervisor**

Plaintiff Gbolahan R.A. Eyiowuawi is a male of Nigerian descent.  [57, at ¶ 2.]  Plaintiff worked for Defendant Cook County from April 1998 until his termination on June 29, 2005.  [*Id.*]  Between May 22, 2000 and June 7, 2005, Plaintiff worked in the Cook County Health and Hospitals ("CCHHS") as a Scheduler Dispatcher in the Home Transportation Department within the Ambulatory and Community Health Network of Cook County ("ACHN").  [*Id.*, at ¶ 4.]  The Home Transportation Department was physically located at the far southeast corner of John H. Stroger, Jr. Hospital.  [*Id.*]  Plaintiff was responsible for scheduling transportation for patients to and from CCHHS, including John H. Stroger, Jr. Hospital or clinics.  [*Id.*, at ¶ 5.]

Dennis Chevalier worked as the Director of Social Work for ACHN from approximately 2003 until approximately 2008.  [*Id.*, at ¶ 6.]  His responsibilities included managing the staff of the Home Transportation Department.  [*Id.*]  In 2000, Chevalier interviewed and made the decision to hire Plaintiff.  [*Id.*, at ¶ 7.]

In April 2003, there was an opening for the position of Home Transportation Supervisor.[2] [65, at ¶ 2.]  On April 3, 2003, Plaintiff submitted an application for this position to Chevalier.  [*Id.*]  Neither Chevalier nor any other representative of Defendant interviewed Plaintiff for the position or communicated with Plaintiff about his application.  [*Id.*]  Chevalier hired Martha Jones to fill the Home Transportation Supervisor position.  [57, at ¶ 9.]  When she was hired, Jones did not have any experience in transportation as far as dispatching and coordinating rides.  [61, at ¶ 3; 57, Exhibit C (Chevalier Deposition), at 19:14–23.]  However, she had been working for Defendant for many years.  In total, Jones worked for Cook County for thirty-one years until she retired on December 27, 2013.  [57, at ¶ 8.]  Prior to her promotion to Home Transportation

---

[2] The parties refer to this position as "Supervisor" and "Coordinator," interchangeably.  For simplicity, the Court only will use the term "Supervisor."

Supervisor, Jones managed the daily operations of the Fantus Clinic, which included the Home Transportation Department. Chevalier knew Jones to have superior administrative skills based on her reputation for her work at the Fantus Clinic. [65, at ¶ 3; 57, Exhibit C, at 62:3–63:13.]

As Home Transportation Supervisor, Jones directly supervised the employees in the Home Transportation Department, including Plaintiff and Sandra Bright, who also worked as a Scheduler Dispatcher. [57, at ¶¶ 10–11.] Jones was Plaintiff's immediate supervisor. [61, at ¶ 3.] Although Jones memorialized and communicated workplace incidents to Chevalier, she did not function as the final decisionmaker in the disciplinary and grievance process of employees. [57, at ¶ 10.] Chevalier was the only person with authority to discipline employees in the Home Transportation Department. [*Id.*, at ¶ 10.]

### B.    Plaintiff's 2003 Lawsuit

On September 17, 2003, Plaintiff filed a charge of national origin and sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). [*Id.*, at ¶ 50.] It is undisputed that Chevalier was unaware that Plaintiff filed this charge until after Plaintiff was terminated. [*Id.*, at ¶ 50.] On September 24, 2003, Plaintiff received a Right to Sue letter from the EEOC. [*Id.*, at ¶ 52.]

On December 24, 2003, Plaintiff filed a complaint in the U.S. District Court for the Northern District of Illinois, Case No. 03-cv-9345, alleging sex and national origin discrimination. [61, at ¶ 4.] Plaintiff named Chevalier and Jones as defendants, among others. [*Id.*] Several of the allegations in the complaint concerned the conduct of Chevalier and Jones. [*Id.*] Plaintiff contends that he mailed a copy of the 2003 complaint to each defendant, including Chevalier and Jones. [*Id.*] Defendant disputes that Plaintiff mailed a copy of the 2003 complaint to each defendant, including Chevalier and Jones, emphasizing that Chevalier and Jones

specifically denied any recollection of prior knowledge of any charges or lawsuits related to Plaintiff. [65, at ¶ 4.] Additionally, no answer was ever filed in Plaintiff's 2003 lawsuit. *Eiyowuwai v. John H Stroger Jr.*, No 03-cv-9435 (N.D. Ill. Dec. 24, 2003) [29].[3] The district court directed the U.S. Marshals Service to effectuate service on Plaintiff's behalf, but, as the Seventh Circuit noted, there is no indication in the record that Plaintiff ever delivered the necessary paperwork or paid any required fees to the Marshals Service. [*Id.*; *Eyiowuawi v. John H. Stroger, Jr. Hosp. of Cook Cty.*, 146 F. App'x 57, 59 (7th Cir. 2005).] The district court set the case for a status hearing, and an assistant state's attorney appeared on behalf of Defendant and notified the court that none of the defendants had been served. [*Eyiowuawi*, 146 F. App'x at 59.] Plaintiff failed to appear for the status hearing, and on April 21, 2004, the district court dismissed the case for failure to prosecute. [*Id.*] The district court denied Plaintiff's motion to reconsider under Federal Rule of Civil Procedure 60(b), and on September 5, 2005, the Seventh Circuit affirmed. [*Id.*]

## C. Plaintiff's April 23, 2004 IDHR Charge

On April 23, 2004, Plaintiff filed charge number 2004-CF-3253 with the Illinois Department of Human Rights ("IDHR") alleging national origin discrimination, sex discrimination, and retaliation. [57, at ¶ 55.] It is undisputed that Chevalier was unaware that Plaintiff filed that charge. [*Id.*, at ¶ 56.] Chevalier testified that he was unaware that Plaintiff initiated any proceedings with the EEOC, IDHR, or court until after Plaintiff's termination. [*Id.*, at ¶ 56.] The charge specifically names Jones in several of its allegations. [65, at ¶ 5.] When Jones was asked when she became aware of Plaintiff's April 23, 2004 charge with the IDHR, she

---

[3] As the Court did when it ruled on Defendant's motion to dismiss, [see 34], the Court takes judicial notice of Plaintiff's relevant previous federal lawsuits, *Eyiowuwai v. John H. Stroger, Jr.*, No 03-cv-9435 (N.D. Ill. Dec. 24, 2003) and *Eyiowuawi v. Cook County*, No. 05-cv-5213 (N.D. Ill. Sept. 12, 2005). See *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

responded "probably in 2008." [57, Exhibit D (Jones Deposition), at 21:23–22:1.] When pressed if her testimony was that she was not made aware of the charge until four years after it was filed, Jones stated, "I want to be truthful, but I can't remember the date because most of the stuff that I did was from 2008. I could have seen it sooner, but I am not sure." [*Id.*, at 22:2–9.] In his deposition, Plaintiff could not recall whether he ever served anyone with this IDHR charge. [57, at ¶ 60.] Plaintiff did not know whether Chevalier ever learned of this charge, and he denied that any co-worker learned of this charge. [*Id.*] Plaintiff admits that no Cook County employee, including Chevalier, Jones, Bright, or former co-worker Erma Brandy, ever spoke with Plaintiff about his IDHR charge number 2004-CF-3253. [*Id.*, at ¶ 61.]

After Plaintiff filed IDHR charge number 2004-CF-3253 on April 23, 2004, he remained employed with Defendant until his termination on June 7, 2005. [*Id.*, at ¶ 62.] Between April 23, 2004 and his suspension on June 7, 2005, Defendant never denied Plaintiff any promotion opportunities, a requested transfer, or job or skills training, reduced his pay, nor did Defendant ever discipline Plaintiff or otherwise change the terms and conditions of his employment. [*Id.*] On his evaluation dated March 25, 2005, Plaintiff earned unsatisfactory performance grades. Specifically, he was categorized as an "unsatisfactory performer" in the following areas: (1) complies with patients' rights/safety policy; respect and dignity for patients, families, and visits; (2) demonstrates ability to be emotionally mature, objective and sensitive to people and their problems; (3) develops observable and measureable goals and expected outcomes in the areas of problem resolution, resource management, and patient satisfaction for each problem, issue or concern; (4) accepts supervision and constructive comments in an appropriate matter. [*Id.*, at ¶ 63.] The evaluation was signed by Chevalier and Jones. [65, at ¶ 8.]

Additionally, Defendant had previously disciplined Plaintiff on seven other occasions: (1) suspended for five days on February 21, 2002 for harassment and directed to receive Sexual Harassment training by the Human Resources Department; (2) counseled on May 28, 2003 for using sick time for court; (3) verbal reprimand on June 2, 2003 for returning late from lunch; (4) suspended for one day on August 14, 2003 for patient abuse; (5) verbal reprimand on January 22, 2004 for violation of dress code policy, lateness, and lack of professionalism; (6) written reprimand on February 24, 2004 for lateness; and (7) suspended twenty nine days on April 22, 2004 for mistreating or abusing employees, patients, or visitors, using profanity in the work area, and intimidation of patients, employees, or visitors. [57, at ¶ 64.] Chevalier made the decision to suspend Plaintiff for twenty nine days on April 22, 2004. [*Id.*, at ¶ 65.]

### D.  The June 7, 2005 Incident

Plaintiff and Bright were the only two dispatchers assigned to work together from October 18, 2004 through June 7, 2005. [57, at ¶ 12.] Bright testified that on June 7, 2005, while at work, she walked down an aisle between the front desk area and file cabinets toward the refrigerator in the Home Transportation Department to retrieve her lunch. [57, at ¶ 13.] Bright testified that Plaintiff blocked her by rolling his chair into her path and grabbing her arms tightly. [*Id.*] Bright further testified that she was shocked and told Plaintiff to let her go. [*Id.*, at ¶ 14.] Bright testified that she broke away from Plaintiff by jerking away from him and that Plaintiff seemed upset during the incident. [*Id.*] According to Bright, Plaintiff told her that he loved her and that he wanted her to talk to him "because they're trying to make" her not like him. Bright testified that Plaintiff said, "they are trying to make you hate me. I just want you to talk to me, talk to me," and that she then "snatched away from him and told him to get his hands off." her. [*Id.*, at ¶ 15; 57, Exhibit E (Bright Deposition), at 19:18–20:5.] Bright went to the cafeteria for

her lunch break.  [*Id*.]  Bright testified that when she returned from her lunch break, she proceeded to go back to the refrigerator, and Plaintiff again slid his chair into her path and grabbed her.  [*Id.*, at ¶ 16.]  According to Bright, Plaintiff again told her that he loved her and that he wanted her to talk to him.  [*Id*.]  Bright testified that Johnnie Walker and Irving Wright witnessed this incident.  [*Id.*, at ¶ 17.]  Bright testified that she was upset, angry, intimidated, and frightened by the incident.  [*Id.*, at ¶ 18.]  Bright reported the incident to the hospital police and contacted Jones and Chevalier.  [*Id.*]

Plaintiff denies that he blocked Bright's path, grabbed her arms, or said that he loved her. [61, at ¶ 13–14; 63, Exhibit 1 (Eyiowuawi Affidavit).]  According to Plaintiff, he was upset because he wanted to remain friends with Bright and did not want Bright to dislike him because of Jones.  [*Id.*, at ¶ 14.]  Plaintiff admits that he approached Bright when she was getting her lunch on June 7, 2005 and expressed concern that Jones was trying to make Bright dislike him. [*Id.*, at ¶ 15.]  Plaintiff admits that Bright went to the cafeteria for her lunch break but denies blocking her path and grabbing her arms when she returned.  [*Id.*, at ¶ 16.]

### E.       The Investigation of the June 7, 2005 Incident

Jones participated in investigating the June 7, 2005 incident.  [57, at ¶ 19.]  She asked Bright to write a statement and collected statements from two eyewitnesses employed by Chicago Medicar: a driver named John Walker, and a dispatcher named Irving Wright.  [*Id.*] Wright's statement says, "On Tuesday, June 7, 2005 at approximately 2:51 p.m., I heard [Plaintiff] say to Sandra [Bright] in the work area that he loved her and can't nobody stop him from loving her."  [38-1, Exhibit 2.]  Walker's statement reads:

> On Tuesday, June 14, 2005 at approximately 11:20 a.m., Chicago Medicar driver Johnnie Walker came into the Home Transportation area and stated to Sandra Bright that he did not know that she was a fatal attraction.  He saw [Plaintiff] coming out of Stronger Hospital pulling a briefcase and his hat on backward.  Mr.

> Walker stated that he said to [Plaintiff] "man you must be on vacation," that's when [Plaintiff] tried to explain what had happened. Mr. Walker stated that [Plaintiff] told him that "he did not want to come back because that would be nothing but trouble and tell Sandra [Bright] that he loves her and do not tell Ms. Jones."

[38-1, Exhibit 3.] Jones later provided Chevalier with a letter documenting this incident. [*Id.*] Chevalier investigated the incident and interviewed Plaintiff and Bright. [*Id.*, at ¶ 20.] Chevalier testified that Plaintiff admitted that he told Bright that he loved her, that "nobody can stop him," and that he restricted her movements. [*Id.*; 57, Exhibit C, at 57:7–58:5; 70:4–71:8.] Plaintiff contends that Chevalier spoke with him about the incident but that Plaintiff never told Chevalier that he physically restrained Bright, blocked her way with his chair, grabbed her by the wrists, or said that he loved her. [61, at ¶ 20; 63, Exhibit 1, at ¶ 13.]

After conducting an investigation, Chevalier believed that there was credible evidence that Plaintiff violated the CCHHS policy on sexual harassment. [57, at ¶ 21.] On June 7, 2005, John H. Stronger, Jr. Hospital had in effect a Sexual Harassment Policy that prohibited sexual harassment. [*Id.*, at ¶ 22.] The hospital also had in effect Rules and Regulations Governing Employee Conduct, which stated that major cause infractions may be punishable by immediate termination rather than progressive discipline. [*Id.*, at ¶ 23.] It is a major cause infraction for an employee to mistreat or abuse a co-worker. [*Id.*, at ¶ 24.] It is also a violation of the personnel rules to commit a major cause infraction or to intimidate or coerce another employee through physical or verbal threats. [*Id.*, at ¶ 25.] Plaintiff was aware of the Sexual Harassment Policy and the Rules and Regulations for employee conduct. [*Id.*, at ¶ 26.] Chevalier and Jones discussed the incident and decided that it was "the final straw." [65, at ¶ 15.] Accordingly, Chevalier recommended Plaintiff's termination. [*Id.*] Jones was not the final decisionmaker in the disciplinary and grievance process of employees. [57, at ¶ 10.]

Plaintiff contends that there were one or more video surveillance cameras in the area where Plaintiff worked on the day of the incident and that "to the best of Plaintiff's knowledge, the video camera(s) would have recorded all or part of the encounter that took place between Plaintiff and Bright." [65, at ¶ 14.] However, neither Chevalier nor Jones reviewed the video recording. [*Id.*] Chevalier testified that he believed "the video surveillance is situated in such [sic] that it's really just looking at the patient seating area." [*Id.*] Jones similarly testified that the video surveillance camera was in the patient care area and would only show the patient care area. [*Id.*] According to Jones, the video would not show anything that happened behind the desk. [*Id.*] Jones also testified that she asked for the footage from the chief of the hospital police. [*Id.*]

As a result of the June 7, 2005 incident, Plaintiff was placed on administrative leave on June 7, 2005, pending a disciplinary hearing. [57, at ¶ 27.] On June 17, 2005, Jesus Estrada, Director of Cermak Health Services, presided as hearing officer of Plaintiff's disciplinary hearing where Defendant charged Plaintiff with the following: (1) violation of the Cook County Sexual Harassment Policy; (2) violation of the Cook County Rules and Regulations; and (3) intimidating or coercing another employee through physical or verbal threats. [*Id.*, at ¶ 28.] Chevalier represented management at this hearing and recommended Plaintiff's termination. Hearing Officer Estrada was free to reject, accept, or modify Chevalier's recommendation. [*Id.*] Present at the hearing were Plaintiff, Plaintiff's union representatives, Chevalier, Jones, and management representatives, Sydney Thomas, Gayla Holley, and Tom Jablonski. [*Id.*, at ¶ 29.]

At the hearing, Bright testified as to the events on June 7, 2005. [*Id.*, at ¶ 30.] Plaintiff was not allowed to ask Bright any questions after she testified. [65, at ¶ 16.] Plaintiff was not given a copy of the charges against him, nor the written statement that had been prepared by

Bright, until the day of the disciplinary hearing, but he was aware that he was being accused of sexual harassment. [See *id.*] On June 24, Hearing Officer Estrada found that Cook County proved the charges against Plaintiff and recommended Plaintiff's termination. Estrada's write-up of his findings states: "There are no questions as to the fact that there was a conversation between you and Ms. Bright on June 7, 2005. By your own admission you physically block her ability to leave the area. You [sic] during the course of this conversation you physically touched Ms. Bright." [57, Exhibit H, at 2; 57, at ¶ 31.] Plaintiff contends that at the hearing, he never said that he had physically blocked or touched Bright on June 7, 2005. [61, at ¶ 31.] On June 29, 2005, Gayla Holley, Director of Human Resources, ACHN, notified Plaintiff that as a result of the findings of his pre-disciplinary hearing, Plaintiff was terminated. [57, at ¶ 33.]

**F.    Procedural History**

On July 7, 2005, Plaintiff filed charge 2006-CF-0024 with the IDHR alleging that Cook County retaliated against him for filing an earlier charge of discrimination dated April 23, 2004. [57, at ¶ 34.] On July 14, 2005, the IDHR charge was sent to the EEOC for dual filing purposes under EEOC Charge Number 21B-2005-02523.[4] [*Id*, at ¶ 35.] On May 3, 2012, Plaintiff requested from the EEOC a right to sue letter for Charge Number 21B-2005-02523. [57, at

---

[4] On September 28, 2007, Plaintiff filed a new complaint for charge number 2006-CF-0024 with the Illinois Human Rights Commission. [*Id.*, at ¶ 36.] On November 18, 2011, the Administrative Law Judge entered a recommended order and decision granting Defendant Cook County's motion for summary judgment on charge 2006-CF-0024. On April 4, 2014, the Illinois Human Rights Commission entered this decision as a final order. Plaintiff never appealed this decision. [*Id.*, at ¶ 37.]

On September 12, 2005, Plaintiff filed a second lawsuit in the U.S. District Court for the Northern District of Illinois. [*Id.*, at ¶ 38; see also *Eiyowuawi v. Cook County*, No. 05-cv-5213 (N.D. Ill. Sept. 12, 2005).] Plaintiff alleged that he was fired as retaliation for filing a charge with the IDHR. [57, at ¶ 38.] On November 2, 2005, Judge Gettleman granted Defendant's motion to dismiss and dismissed Plaintiff's suit with leave to reinstate upon exhaustion of state administrative remedies. [*Id.*, at ¶ 39.] Plaintiff moved to reinstate on April 9, 2012, but Judge Gettleman denied Plaintiff's motion on June 21, 2012. [*Id.*, at ¶ 40; *Eyiowuawi v. Cook County*, No. 05-cv-5213 (N.D. Ill. June 21, 2012) [35].]

¶ 41.]  On June 28, 2012, the EEOC sent Plaintiff a Notice of Right to Sue under Charge Number 21B-2005-02523.  [*Id.*, at ¶ 42.]

Plaintiff brought this lawsuit on August 16, 2012 and filed an amended complaint [27] on June 10, 2013.  Defendant moved for summary judgment, arguing that Plaintiff is not the real party in interest under Federal Rule of Civil Procedure 17(a) because Plaintiff filed for Chapter 7 bankruptcy after his retaliation claim in this case accrued against Defendant, and thus the trustee of Plaintiffs bankruptcy estate has exclusive possession of the legal right to enforce the claims raised in this lawsuit.  The Court denied Defendant's motion for summary judgment without prejudice and stayed the case pending Plaintiff's attempt to reopen his Chapter 7 proceedings before the U.S. Bankruptcy Court for the Northern District of Georgia.  [72.]  On July 25, 2016, Plaintiff filed a status report informing the Court that Plaintiff filed a motion to reopen his case in the U.S. Bankruptcy Court for the Northern District of Georgia and that the Bankruptcy Trustee had decided to administer Plaintiff's claim against Defendant as part of the bankruptcy estate.  [76.]  On January 5, 2017, Defendant renewed its motion for summary judgment [83], which is now before the Court.

## II.    Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving

party and draw all reasonable inferences in favor of the nonmoving party.  *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016).  However, the Court will not draw inferences that are "supported by only speculation or conjecture," *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)) (internal citations omitted), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment.  *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).  To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.  Summary judgment is proper if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## II.    Analysis

Defendant moves for summary judgment, arguing that no reasonable factfinder could conclude that Defendant retaliated against Plaintiff as a result of any protected conduct.  As an

initial matter, Defendant argues, and Plaintiff does not dispute, that Plaintiff's claim is limited to the scope of Plaintiff's July 14, 2005 EEOC Charge Number 21B-2005-02523. The Court agrees. A plaintiff is barred from raising a claim in district court that has not been raised in an EEOC charge, unless the claim is "reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (citing *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the conduct about which the employee complains." *Patterson v. Triangle Tool Corp.*, 2016 WL 5374123, at *2 (E.D. Wis. Sept. 26, 2016). "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502.

Here, the Plaintiff received from the EEOC a Notice of Right to Sue under Charge Number 21B-2005-02523. In that charge, Plaintiff alleges that his suspension and termination in June 2005 were in retaliation for having filed charge number 2004-CF-3253 with the IDHR on April 23, 2004, in which Plaintiff alleged national origin discrimination, sex discrimination, and retaliation. Consequently, the scope of this lawsuit is limited to the issue of Title VII retaliation, and the Court grants summary judgment for Defendant on Plaintiff's claims of national origin and sex discrimination. See *Ekanem v. Health And Hospital Corp.*, 724 F.2d 563, 573 (7th Cir. 1983) ("A charge that a given wage is too low because of unlawful *retaliation* is not the same as a charge that a given wage is too low because of unlawful *race discrimination*." (emphasis in original)); cf. *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 544–45 (7th Cir. 1988) (plaintiff's

retaliation claim was outside the scope of the charge of age discrimination because it "injects an entirely new theory of liability into the case alleging unlawful activity of much different nature than the age discrimination alleged in the charge").

The Court now turns to the merits of Plaintiff's retaliation claim. Title VII prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one. 42 U.S.C. § 2000e–3(a); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). To prevail on a Title VII retaliation claim, a plaintiff must prove that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is causal link between the two. *Lord*, 839 F.3d at 563. Here, the parties agree that the first two prongs of this test are satisfied. Plaintiff engaged in protected activity when he filed charge number 2004-CF-3253 with the IDRH on April 23, 2004 alleging national origin and sex discrimination. *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012) (noting that the plaintiff's formal EEOC charges were "the most obvious form of statutorily protected activity" (citation and internal quotation marks omitted)). Additionally, Plaintiff suffered an adverse employment action when Defendant terminated him on June 29, 2005.

The parties dispute only whether Plaintiff can satisfy the third required element and demonstrate that he was terminated in June 2005 *because of* his IDRH charge of April 23, 2004. A retaliation claim requires proof of but-for causation. *Lord*, 839 F.3d at 563 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013)). The Seventh Circuit recently jettisoned the long-standing practice of distinguishing between the "direct" and "indirect" methods of analyzing retaliation claims. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763–66 (7th Cir. 2016). *Ortiz* instructs courts to focus on a more straightforward inquiry: "Does the

record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Lord*, 839 F.3d at 563; see also *Ortiz*, 834 F.3d at 765 ("Th[e] legal standard * * * is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's * * * proscribed factor caused the discharge or other adverse employment action."). The Court is to consider the evidence as a whole, rather than asking whether any particular piece of evidence proves the case by itself. *Id.*

Direct evidence, such as an admission by the employer of unlawful animus, is sufficient to demonstrate a causal connection, but rare. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). A plaintiff may "also supply the causal link through circumstantial evidence from which a jury may infer intentional discrimination." *Id.* (citation and internal quotation marks omitted). Circumstantial evidence may include suspicious timing, ambiguous statements or behavior towards protected employees, evidence, statistical or otherwise, that similarly situated employees systematically receive better treatment, evidence that the employer offered a pretextual reason for an adverse employment action, and any other relevant information that could permit an inference of retaliation. See *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011); *Rao v. Gondi*, 2017 WL 2445131, at *20 (N.D. Ill. June 5, 2017).

Here, there is no direct evidence that Defendant terminated Plaintiff because of his IDHR charge. Instead, Chevalier testified that he made the recommendation to terminate Plaintiff after investigating the June 7, 2005 incident between Plaintiff and Bright. Turning to circumstantial evidence, Plaintiff argues that Defendant's proffered reason for terminating Plaintiff was pretextual. In determining whether an employer's proffered reason for adverse action is pretextual, the relevant question "is not whether the employer's stated reason was inaccurate or

unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." Coleman, 667 F.3d at 852 (citation and internal quotation marks omitted). "It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Id.* (citation and internal quotation marks omitted). To meet this burden, the plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reason "that a reasonable person could find [it] unworthy of credence." *Id.* (citation and internal quotation marks omitted).

Here, Defendant's proffered reason for terminating Plaintiff is the June 7, 2005 incident with Bright and Plaintiff's alleged violation of the Cook County Sexual Harassment Policy, violation of the Cook County Rules and Regulations, and intimidation or coercion of another employee through physical or verbal threats. Plaintiff argues that "the manner in which Defendant handled the matter supports Plaintiff's claim of pretext." [62, at 11.] Plaintiff contends that Defendant terminated Plaintiff despite his denials, despite the lack of witness collaboration, and without viewing available video evidence. Plaintiff further argues that the disciplinary hearing was "one-sided" because he was not allowed to ask Bright any questions after she testified, and he was not given a copy of the charges against him or the written statement that had been prepared by Bright until the day of the disciplinary hearing. According to Plaintiff, this "one-sided nature of the hearing indicates that its purpose was not to make an impartial assessment of the facts, but rather to rubber stamp a termination decision that had already been made." [62, at 11.]

The Court does not find Plaintiff's pretext argument convincing. First, the Court disagrees that Walker's and Wright's statements contradict Bright's allegations that Plaintiff

sexually harassed her. Although the statements do not contain as much detail as Bright's testimony regarding the incident and do not specifically state that the witnesses saw Plaintiff physically restrain Bright, the statements are consistent with Bright's allegations and indicate that Plaintiff told Bright that he loved her. Additionally, although Plaintiff was not given a copy of the charges against him prior to the disciplinary hearing, he admitted that he was aware that Bright had accused him of sexual harassment. [65, at ¶ 16; see also 57, Exhibit B, at 173:13–20.] Further, Plaintiff's argument that Defendant's failure to view the video evidence demonstrates pretext fails because Chevalier or Jones offered uncontroverted testimony that the camera only recorded the patient care area and did not record the events behind the desk where Plaintiff and Bright were located. Thus, although Plaintiff may dispute Bright's allegations and contend that the evidence did not merit his termination, Plaintiff fails to offer any evidence that Defendant or Chevalier, who recommended Plaintiff's termination, did not honestly believe that termination was warranted after the investigation of the incident. Even assuming, arguendo, that Defendant's determination that Plaintiff harassed Bright on June 7, 2005 was incorrect, the relevant inquiry for the pretext analysis "is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Coleman*, 667 F.3d at 852 (citation and internal quotation marks omitted); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 465 (7th Cir. 2016) (explaining that regardless of whether it is correct in its beliefs, if an employer acted with an honest belief, the court will not second guess the employer's employment decisions under Title VII). It is undisputed that after conducting an investigation, Chevalier believed that there was credible evidence that Plaintiff violated the CCHHS policy on sexual harassment. [57, at ¶ 21.] Therefore, Plaintiff has failed to demonstrate that Defendant's proffered reason for terminating Plaintiff was pretextual.

Plaintiff also fails to set forth other circumstantial evidence from which a reasonable trier of fact could conclude that he was terminated because of his protected activity. Plaintiff argues that "the fact that a year and two months had passed between the date Plaintiff filed his IDHR charge on April 23, 2004 and the date he was terminated is not dispositive." [62, at 10.] However, the Seventh Circuit has explained that "[t]he inference of causation weakens as the time between the protected expression and the adverse action increases, and then additional proof of a causal nexus is necessary." *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014) (quoting *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001)); see also *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 481 (7th Cir. 2010) (year-long gap is insufficient evidence of causal connection when plaintiff presented "no other factual or legal theory linking [protected activity] to her termination"). Plaintiff has not set forth evidence of a causal nexus.

Plaintiff also argues that on March 25, 2005, after he filed his April 23, 2004 IDHR charge, he received an unfavorable evaluation signed by Jones and Chevalier, and that "[a] bad evaluation may constitute part of the 'bits and pieces' of circumstantial evidence from which a retaliatory intent can be inferred." *Coleman*, 667 F.3d at 860. However, a reasonable trier of fact could not infer retaliatory intent from this performance evaluation, which was given eleven months after Plaintiff filed his IDHR charge and is entirely consistent with Plaintiff's undisputed disciplinary history. Further, as discussed below, Plaintiff's performance evaluation is evidence that he was not meeting his employer's legitimate expectations.

Even more problematic for Plaintiff is the fact that he does not present any evidence that Chevalier and Jones were aware of his April 23, 2004 IDHR charge prior to his termination. An employer "must have had actual knowledge of the complaints for [its] decisions to be

retaliatory." *Luckie v. Ameritech Cop.*, 389 F.3d 708, 715 (7th Cir. 2004); accord *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009). "[I]f an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 669 (7th Cir. 2006) (citation and internal quotation marks omitted). Here, it is undisputed that Chevalier, who recommended Plaintiff's termination to the disciplinary hearing officer, was unaware that Plaintiff filed charge 2004-CF-3253 with the IDHR on April 23, 2004 alleging national origin discrimination, sex discrimination, and retaliation, and Chevalier testified that he was unaware that Plaintiff initiated any proceedings with the EEOC, IDHR, or court until after Plaintiff's termination. Jones testified that she became aware of Plaintiff's April 23, 2004 IDHR charge "probably in 2008."[5] [57, Exhibit D, at 21:23–22:1.]

Plaintiff argues that Jones and Chevalier were directly involved in the incidents of discrimination cited by Plaintiff in his EEOC and IDHR charges, and it "strains credulity to believe that the Defendant would respond to [Plaintiff's EEOC and IDHR] charges without contacting the individuals directly involved." [62, at 9.] Plaintiff also emphasizes that Jones and Chevalier were named as defendants in Plaintiff's 2003 lawsuit, and Plaintiff contends that he mailed a copy of the complaint to each defendant. However, Plaintiff's arguments are no more than speculation, as Plaintiff has not offered any admissible evidence supporting his allegation that Jones and Chevalier knew about his April 23, 2004 IDHR charge. In his deposition, Plaintiff could not recall whether he ever served anyone with this IDHR charge. Further,

---

[5] When pressed if her testimony was that she was not made aware of the charge until four years after it was filed, Jones stated, "I want to be truthful, but I can't remember the date because most of the stuff that I did was from 2008. I could have seen it sooner, but I am not sure." [57, Exhibit D, at 22:2–9.] However, the Court notes that even if Jones was aware of Plaintiff's IDHR charge prior to 2008, this does not save the day for Plaintiff, as Jones was not the final decisionmaker, and Plaintiff still has failed to set forth evidence from which a reasonable factfinder could conclude that there is a causal link between Plaintiff's IDHR charge and his termination.

Plaintiff admitted that no employee of Defendant, including Jones or Chevalier, ever spoke with Plaintiff about his April 23, 2004 IDHR charge. Regarding the 2003 lawsuit, the Seventh Circuit concluded that there was no evidence in the record that the defendants had ever been served.[6] *Eyiowuawi v. John H. Stroger, Jr. Hosp. of Cook Cty.*, 146 F. App'x 57, 59 (7th Cir. 2005). Without evidence that Chevalier or Jones knew about Plaintiff's protected conduct, there is no evidence from which a rational trier of fact could conclude that Defendant retaliated against Plaintiff for his statutorily protected activity. See *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1039 (N.D. Ill. 2016), reconsideration denied, 2017 WL 1833152 (N.D. Ill. May 8, 2017) (granting summary judgment for defendant on plaintiff teacher's retaliation claim where plaintiff did not present any evidence that principal that recommended teachers for hire was aware of her protected activity).

Additionally, Plaintiff cannot succeed on his retaliation claim under the *McDonnell Douglas* burden-shifting framework. Because *Ortiz* does not remove the burden-shifting *McDonnell Douglas* framework from the set of means by which a plaintiff may defeat summary judgment, Plaintiff may attempt prove retaliation by showing that in addition to engaging in protected activity and suffering a materially adverse employment action, "he was meeting his employer's legitimate expectations; and * * * he was treated less favorably than similarly-situated employees who did not engage in protected activity." *Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 671 (N.D. Ill. 2016) (quoting *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016)); see also *Ortiz*, 834 F.3d at 766. Once Plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate "a legitimate" reason for the employee's termination." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002).

---

[6] The Court also notes that even if Plaintiff had served Jones and Chevalier in his 2003 lawsuit, this does not show that Jones and Chevalier knew about his April 23, 2004 IDHR charge, which is the subject of Plaintiff's EEOC Charge Number 21B-2005-02523 and this current lawsuit.

"An employer that has proffered a legitimate, non-discriminatory reason for the discharge is entitled to summary judgment unless the plaintiff presents evidence that the proffered reasons are pretexts for discrimination." *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir. 1995).

Here, Plaintiff has not offered any evidence that he met his employer's legitimate employment expectations. In fact, Plaintiff received unsatisfactory performance ratings on his March 25, 2005 evaluation and was disciplined on seven other occasions while working as a Dispatcher Scheduler prior to June 7, 2005. Further, after Plaintiff's disciplinary hearing, the hearing officer concluded that as a result of the June 7, 2005 incident involving Bright, Plaintiff violated the Cook County Sexual Harassment Policy and the Cook County Rules and Regulations, and intimidated or coerced another employee through physical or verbal threats. Thus, no reasonable factfinder could conclude that Plaintiff was meeting his employer's legitimate employment expectations. Additionally, Plaintiff does not attempt to establish that any similarly situated employees that engaged in protected conduct received more favorable treatment than Plaintiff. Thus, Plaintiff has not established a *prima facie* case of retaliation under the *McDonnell Douglas* framework, and the burden does not shift to Defendant to articulate a legitimate reason for Plaintiff's termination. Further, even if Plaintiff had been able establish a *prima facie* case of retaliation, the Court already has concluded that Defendant's proffered reason for terminating Plaintiff—the June 7, 2005 incident with Bright—is not pretextual.

In sum, assessing cumulatively all of the evidence presented by Plaintiff and viewing the evidence as a whole, in the light most favorable to Plaintiff as the Court must, no reasonable factfinder could conclude that Defendant terminated Plaintiff in retaliation for his April 23, 2004

IDHR charge.  For all of these reasons, Defendant's motion for summary judgment [83] is granted.

**III.    Conclusion**

For the reasons stated above, the Court grants Defendant's motion for summary judgment [83].  As a housekeeping matter, Plaintiff's motion for leave to file a supplemental memorandum in response to Defendant's motion for summary judgment and Plaintiff's request to continue as *pro se* [86] is stricken as moot, as it is duplicative of Plaintiff's motion [89], which the Court granted in part and denied in part [91].  The Court will issue final judgment and close the case.

Dated: September 19, 2017

_____
Robert M. Dow, Jr.
United States District Judge